Thank you. Move to the next case this morning, Stavropoulos v. U.S. Good morning, Judge. Joel Handler for the plaintiff, David Stavropoulos. Mr. Handler, you may proceed. Thank you, Judge. May it please the court. Judge, we are seeking a reversal of the decision rendered by Judge Feinerman. In connection, there was no liability on the part of government when Mr. Stavropoulos was struck twice in the left testicle on March 8, 2017, at O'Hare Airport. But, Mr. Handler, can we just get straight to the point here? Judge Feinerman decided this after a full bench trial. And so he made findings of fact that are entitled to the usual deference the Federal Rule of Civil Procedure 52 calls for. And there's video evidence in the record. It's very hard for me to see Judge Feinerman's fact findings. It's so far outside the boundary of the evidence that we would not be bound by them, that we would not need to give them that clear error deference that the rules call for. Respectfully, I disagree. Because when you look at the entire evidence in the case, I don't believe that Judge Feinerman looked at the entire evidence in the case. But what evidence is there of that? I mean, you don't. It's something that he considered as a judge. You don't need to mention every last sentence. He gives a very thorough explanation of his conclusions. I understand what you're saying. But I didn't mean to interrupt you, Judge. No, that's all right. I just am not. What part of the record was he supposed to look at differently, other than the fact that you think the district judge should have credited what Mr. Stavropoulos said, and the judge didn't find him in the light of the video evidence and other things to be a credible witness? Not only what Mr. Stavropoulos said, it's what Mr. Stavropoulos' experts said. And it's even what Dr. Nadler, the government's expert, said, that that really calls into a question why this matter should be reversed. So when you deal here, here, let's look at it. No one questions, and I think the evidence is uncontroverted, that prior to March 8th of 2017, Mr. Stavropoulos did not have pain in his left testicle. Then on the date in question, there's no evidence other than Officer Capone striking him twice in that left testicle that caused the pain in the left testicle. Can I ask whether you think the district court was compelled to characterize that contact as striking versus just making contact with? I mean, you look at the video of the pat-down, and you don't see somebody backing up and severely hitting another person. Well, no, it's not a severe hit, Judge, but in the same breath, it is a situation, if you look at video, where Mr. Stavropoulos' pants even shot forward. So I mean, whether you deem it a strike or you deem it a hit, what it is is that under the SOP that TSA has, he's not supposed to touch him, all right? And I disagree with Judge Feinerman that it's not an incidental situation here. He did it twice, and you're talking about an individual who is six feet tall, 285 pounds. So Mr. Handler, if you had gone to a jury trial instead of a bench trial, would you be making the same arguments before us? Because the reason I ask that question is it seems to me, consistent with Judge Wood's questions, that you're arguing that Judge Feinerman just got the facts wrong. He just didn't agree on the facts and ruled against your client. And if this was a jury trial, and they had ruled in favor of the TSA, would you be making the same arguments on appeal that you're making now? I would be making the same arguments on appeal. I would. Because you have this situation, as I said, when you go and you look at the progression, it's not only just our evidence that we presented. It's the government's evidence, too, that shows that we did satisfy, we proved by proponents of the evidence, the causation and fact component. Judge Feinerman didn't even deal with legal causation in his opinion. So I believe that we did. So as I was saying just a moment ago, so you have nothing going into March 8, 2017, other than what occurred on March 8, 2017. But it's almost a res ipsa loquitur argument. There was this contact, perhaps too rough, during the pat-down process. And later on, Mr. Stavropoulos winds up with significant testicular pain, which eventually gets addressed by surgery. And I guess he's better now, which is good. But just because event A happens doesn't necessarily mean that it causes condition B. And the judge made a finding that it didn't. Well, but condition B was caused by condition A, meaning this D-B situation. Well, you say that, but the judge didn't agree with you. Well, I understand that he didn't agree with me. But that's why I say that it was clearly a wrong case. Look at the situation. They start talking about observations, subjective opinions about the amount of the pain. But look at what was done both by Dr. Elterman and Dr. Levine. You have a situation where Elterman does the spinal cord injection, takes a six-inch needle, and injects it into his testicle. And he has immediate relief. You have the situation where Dr. Levine performs an hour and a half surgery on this man. And he is cured. He is absolutely fine. Situation where he couldn't even touch. Neither doctor could get near him to touch his testicles to examine him. And now he has the surgery, and he's perfectly fine. It cured him. I reserve my time, and I don't want to cut it off. But if you have any further questions, I'll be glad to answer your questions. But if not, I'd like to reserve my time. Thank you, Mr. Bannon. Mr. Linden. Mr. Linden, you may proceed. Thank you, Your Honor. May it please the court, counsel? The video alone, in this case, supports the district court's decision. I mean, if he was really struck in the testicle so hard that it caused 8 out of 10 extreme pain, like felt like there was a knife stabbed in his testicle, he would have hit the ground like a rock. I mean, at least he'd be bent over, sort of covering his groin, trying to lean on something. But instead, we see him just casually turn around. And the first thing he did is he pulled up his pants, which is exactly the opposite of what you would expect from somebody who had just been hit in the groin that hard, causing that level of pain. And then the video just shows him sort of casually stand to the side, running his hands through his hair and so forth, waiting for the supervisor. And then he goes over to the carry-on luggage, you know, to get his bag, his law books. You know, he's studying for his torts final, so he needs to get his books. And he gets agitated, not because he's in pain or because he's injured, but you see him pointing at the bag, like they're doing something with his bag. And then he kind of casually walks over to stand with the supervisor, waiting for the police to arrive. There's no hesitation in his gait. He's not limping. He's not walking stiff-legged, nothing. And then he stands over with the supervisor. Even the supervisor leans on like a metal railing behind him just to take the weight up his legs because he's been waiting there for a while. The plaintiff feels no desire to do that. And that is just not consistent with somebody who has been, you know, injured in a way, or in pain in the way he claims. So, you know, just based on the video evidence alone, the district court did not clearly err. I mean, but there's more, of course. There's the emergency records. The emergency room records from Weiss Hospital. He went there immediately after the incident at O'Hare, and they did two tests. They did a physical exam, and then they did an ultrasound of his testicle. Both of those were completely normal. The ultrasound showed no swelling, no bruising, no changes in blood flow. And as Dr. Nadler, who, by the way, was the only groin trauma expert to testify, stated if there had been anything remotely close to the type of injury he's claiming, it would have showed up on the ultrasound. And again, there was absolutely nothing. And that is Defendant's Exhibit 9, those records. And then, of course, there's the incident report, which is the other contemporaneous piece of evidence here. That contained all the statements from the people that were there at the time. There is not one line in any of those statements indicating the plaintiff complained of being injured or in pain at the time. Now, he did complain that they had grabbed his testicles or touched his testicles, but that's very different than being injured or in pain. And in fact, as Supervisor Baker testified, if he had complained about pain or injury, a whole new process would have happened. There would have been medical people brought in, there would have been more forms filled out. And you see in the video, there are no medical people showing up, and there are no forms that have been introduced by any party regarding a claim of injury there. So, you know, for those, you know, just those three reasons, the district court got it right and definitely did not commit even close to clear error in assessing the evidence and assessing the credibility of the witnesses. Unless the court has any questions, we ask that you affirm the decision of the district court. Thank you, Mr. Linden. Mr. Handler. Mr. Judge, thank you. Let's deal with some of the points that Mr. Linden brought up, okay? About the incident report. There's nothing in the incident report that indicated that anyone even asked him if he was hurt. Also, the incident report, of all these individuals who gave statements, what did all these individuals say at the trial? I don't remember what was discussed with this individual. I had no recollection. Or the incident report was prepared by someone other than the person. So there's no value to the incident report. Where the value is, is in terms of the individuals who testified at trial. And the individuals who testified at trial, it was clear, was Mr. Staropoulos, who came in unrebutted, all right? Whereas, with the exception of one person, Mr. Spindon, all the other individuals who testified on behalf of the government were impeached. Then you have, Mr. Linden makes reference, oh, that Dr. Nadler, that they did this testicular trauma accident. He was not a testicular trauma expert. If you look, and his testimony was clear, he is a cancer doctor. He is not a trauma doctor. He said it was 1% of his practice. Where was he? I even asked him, did you ever write an article about testicular trauma? No. And who did he say were the leading individuals in the field with regard to this? Alterman and Dr. Levine. So I don't put any weight about that. But then again, when you say, when you look at Dr. Nadler's testimony, he did say that Mr. Staropoulos did have pain. So where was the pain? The pain emanated from the situation on March 8th. Not, it wasn't neurological. Dr. Nadler even indicated that there was nothing neurological that caused Staropoulos's pain. Dr. Nadler said, I do not believe that Mr. Staropoulos is lying, the fact that he has pain. So where did it come from? It's not idiopathic. It just, you know, it just defies imagination that someone can go ahead on the same day, be struck twice in the left testicle, and then something, some unknown cause occurring on the same day resulted in him being injured in his left testicle. You know, pulling up the pants, Mr. Staropoulos testified about pulling up his pants. It had no effect on him. It didn't hurt. Did the government introduce any evidence that said, yes, it did? No, it didn't. So that doesn't hold any weight here. And that he should have hit the ground. Well, Mr. Staropoulos testified that he did have a great tolerance for pain. Now, did the government refute that in any respect? No, it didn't. So this is just not a situation that, okay, that a judge said, well, if you don't believe this or whatever. Judge Finerman did not consider everything. And when you look at everything and you consider all the evidence that was presented at trial, the outcome should be that this, that Judge Finerman's decision should be reversed and judgment should be entered in favor of Mr. Staropoulos. Thank you for your time. Thanks to both counsel and the case is taken under advice.